

FILED

JUL 2 3 2019

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

# IN THE UNITED STATES DISTRICT COURT
### FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD

Stephen Westley Hatfield
D.O.C. #3436031
795 Virginia Avenue
Stevens Correctional Center
Welch, West Virginia  24801
                            **Plaintiff,**


*Vs.*                                          Civil No.: __1:19-cv- 00539__
                                                    To be filled in by the Court


Dr. Thomas Reed
401 College Avenue
Ashland, Ohio 44805
In his individual and official capacity;
                            **Defendant.**


## 42 U.S.C. Section 1983 Civil Action Complaint


## I. INTRODUCTION

In every line of this first pleading, Plaintiff undertakes to allege the essential ultimate facts, not legal conclusions nor matters of evidence, although in a subsequent pleading, facts may establish a separate cause of action for retaliation from this case. But here, Plaintiff simply has attempted to make the path to the legal effects on him from the facts in this first pleading reasonably clear; but should his sincere efforts be insufficient, he respectfully seeks from this Honorable Court directives for correcting same rather than an out-right dismissal, as Plaintiff has paid in-full all required fees for filing and service of summons and complaint.

1

## II. JURISDICTION AND VENUE

1.      This 42 U.S.C. Section 1983 Civil Action Complaint is squarely based on one or more Federal Statutes and provisions within the Constitution of the United States of America.

2.      The United States District Court for the Southern District of West Virginia at 601 Federal Street, Bluefield, WV, is the appropriate venue under 28 U.S.C. Section 1391 (b)(2) because this is where jurisdiction of the events giving rise to the claims in this case occurred.

3.      This Civil Action Complaint is authorized by 42 U.S.C. Section 1983 to redress the deprivations, under color of state law of rights secured by the Constitution of the United States of America. The U.S. District Court for the Southern District of WV also has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3).

4.      Plaintiff seeks DECLARATORY relief pursuant to 28 U.S.C. Section 2201 and 2202; and his claims for INJUNCTIVE relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the U.S. Federal Rules of Civil Procedure.

5.      Jurisdiction is further based on diversity, given Defendant Dr. Thomas Reed is not a resident of the State of West Virginia but this is where Plaintiff Hatfield presently resides.

## III. FEDERAL JURISDICTION 28, U.S.C. SECTION 1331 & 1343(a)(3)

6.      Should this Honorable Court determine 42 U.S.C. Section 1983 is not the most appropriate jurisdiction for this case, then Plaintiff respectfully seeks Federal Jurisdiction under the 2nd most commonly recognized and utilized bases for Federal Court Jurisdiction: (1), federal question under 28 U.S.C. Section 1331; and (2), 28 U.S.C. Section 1343(a)(3).

7.      Under Twenty-Eight U.S.C. Section 1331, federal law must create the cause of action, or some substantial, disputed question of federal law must be an element in the plaintiff's claim. *Napoleon Hardwoods, Inc. Vs. Professionally Designed Benefits, Inc.*, 984 F.2d 821, 822 (7th Cir. 1993) citing *Franchise Tax Bd. Vs. California Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 2855-56, 77 L. Ed. 2d 420 (1983).

8.      This Court has jurisdiction under 28 U.S.C. Section 1343(a)(3) over "any civil action authorized by law to be commenced by any person ... to redress the deprivation (by a state) of any right ... secured by the Constitution of the United States or by any Act of Congress providing for equal rights of ... all persons within the jurisdiction of the United States."

9.      Federal question jurisdiction exists so long as "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, is 'really' one of federal law"'. *Franchise Tax Bd.*, 463 U.S. at 13 (1983).

10.     Before this Court entertains a claim for recovery under the Constitution or federal statutes, it must conduct an initial review of the face of the complaint to determine whether the merits are sufficiently substantial to engage the subject matter jurisdiction of the court. *See e.g., Ricketts Vs. Midwest Nat'l Bank*, 874 F.2d 1177, 1180-82 (7th Cir. 1989). If the court determines the claim is "wholly insubstantial and frivolous", the court does not have the power to decide the case and it must be dismissed for lack of subject matter jurisdiction. *Ricketts*, 874 F.2d at 1182. See, *also, Joyce Vs. Joyce*, 975 F.2d 379, 383 (7th Cir. 1992).

11.     Under this jurisdiction Plaintiff Hatfield also seeks DECLARATORY relief pursuant to 28 U.S.C. Section 2201 and 2202; and his claims for INJUNCTIVE relief also are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the U.S. Federal Rules of Civil Procedure.

## IV. PLAINTIFF

12.     Plaintiff, Stephen W. Hatfield, is and was at all times mentioned herein a prisoner of the State of West Virginia in the custody of the West Virginia Division of Corrections and presently held at Stevens Correctional Center, located in McDowell County, West Virginia.

## V. DEFENDANT

13.     In *Quincy West Vs. Samuel Atkins*, 487 US 42, 101 L Ed 2d 40, 108 S Ct 2250, the U.S. Supreme Court held a private person exercising power from the government, even if they do not actually work for the State directly can be sued using Section 1983 while working *with* or *for* prison officials. In *West, Supra,* the opinion by Blackmun, J., joined by Rehnquist, Ch. J., and Brennan, White, Marshall, Stevens, O'Connor, and Kennedy, JJ., held (1) a physician who is under contract with a state to provide medical services to inmates at a state prison hospital on a part-time basis acts "under color of state law," within the meaning of § 1983, when he treats an inmate; and (2) defendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment.

14.     More pointedly in *West, Supra,* Scalia, J., concurred in part and concurred in the judgment, expressing the view (1) the physician acted "under color of state law" for purposes of § 1983; (2) a physician who lacks supervisory or other penological duties cannot inflict "punishment" within the meaning of the Eighth Amendment, but a physician who acts on behalf of the state to provide needed medical attention to a person who is involuntarily in state custody and cannot otherwise obtain such care, and who causes physical harm to such a person by deliberate indifference, deprives that person of liberty without due process in violation of the Federal Constitution's Fourteenth Amendment; and (3) the inmate's pro se complaint merely claimed violation of his rights, and it was the courts that had specified which constitutional provision conferred those rights.

15.     Defendant, Dr. Thomas Reed, works as a professor of music for Ashland University located in Ashland, Ohio, of which college financed Plaintiff's college enrollment through a Federal Student Aid Pell Grant, operating through Ashland University's Correctional Education Program partnership with the State of West Virginia at Stevens Correctional Center, McDowell County, West Virginia, of which facility is contracted to house West Virginia Division of Corrections prisoners sentenced to serve prison terms within the State.

16.     Seeing this, Defendant Dr. Thomas Reed is sued in his *individual* and in his *official capacity*. At all times in this complaint, defendant Reed acted *under the color of state law*.

# VI. FACTS

17.     The below time-frame of Hatfield's eleven day enrollment at Ashland University, begins on Friday, June 7, 2019. On or about June 18, 2019, Defendant Dr. Thomas Reed of Ashland University, violated Plaintiff Stephen W. Hatfield's constitutional rights, when he, without due care, defamed and shamed Hatfield with his written and published impulsive and unsubstantiated claim of plagiarism, preventing as it were Plaintiff from continuing in the scope of his life-long dream of some day being able to obtain his baccalaureate degree.

18.     NAMES, ADDRESSES AND TELEPHONE NUMBERS OF PERSONS RELEVANT TO THE FACTS:

Stephen Westley Hatfield, Plaintiff          Dr. Thomas Reed, Defendant
Stevens Correctional Center               Ashland University (A.U.)
795 Virginia Avenue                     401 College Avenue
Welch, WV 24801                        Ashland, Ohio 44805
Ph.: 304.436.5420                      Ph.: 412.289.4142

19.     Friday, June 7, 2019 > Stephen Westley Hatfield, hereinafter oftentimes referred to as "Plaintiff" or "Hatfield", this date was first supplied with a rechargeable, battery operated electronic TABLET, with an in-house Y-FI interconnect at Stevens Correctional Center together with college enrollment in 3 courses of study, i.e., Geology, Philosophy and Music through Ashland University of Ashland Ohio, "A.U.", financed by way of a Federal Student Aid Pell Grant, in accordance with A.U.'s Correctional Education Program partnership with the State of West Virginia "WV" at Stevens Correctional Center "SCC".

20.     Friday, June 7, 2019 > Hatfield began his studies 17 days behind the rest of the 2019 Summer Term with an apparatus he's neither used and certainly had not adequately trained on. Still, he begin feverishly playing catch-up. Here, Hatfield, an almost 70 year old man, whom hasn't taken a college class since 2007 and whom is using a brand new piece of equipment he knows not one thing about, working very hard and doing his very best under the circumstances, because, to complete the final 48 credit hours needed to finish the requisite 128 hours necessary for his baccalaureate degree, remains his lifelong dream.

21.     Friday, June 11, 2019 > Hatfield's course work is very difficult, especially coming on board 17 days behind the intended schedule not to mention the demands of his 3 difficult classes of which 3 courses, Hatfield had no hand in choosing for himself. Geology seems to be his best subject, although initially he didn't like the subject matter. Philosophy is very contradictory in it is terminologies and definitions -- so much so, the subject matter seems almost impossible to sort through. Music is complicated -- even though Hatfield had a keyboard band at the Mount Olive facility and can amateurishly read and write music composition -- requiring an extreme amount of Hatfield's available study time. The instructor, Dr. Thomas Reed, hereinafter oftentimes referred to as "Defendant", "Reed", very much further loads-up course work with an extreme amount of peripheral assignments, e.g. videos to watch and audios to listen to -- tasking his students with complex disseminations of videos and audio recordings, researching the names of instruments and their individual and collective history, coupled with how each one of them, over the ages, has or has not complimented one another. Plaintiff did not select these 3 courses of study and so he, assumes, his former student adviser or Ashland University, did.

22.     Tuesday, June 18, 2019, 10:30A.M. > This date, Hatfield is very pleased with his progress as he finally has caught up with the rest of the 2019 Summer Term class and very much is looking forward to beginning week 4 on schedule. It has taken him 11 full days to complete weeks 1, 2 and 3. While his grades presently are passing -- especially Ms. Elizabeth Massocco's Geology class -- where his overall grade point average stands at 90% or better. For both Philosophy and Music, Hatfield previously has submitted homework assignments which, as of this date, remain ungraded; but, when graded, easily will bring his GPA for these courses above 80%. Beginning this date, he will schedule appropriate time for all 3 classes to more properly stabilize a relatively acceptable grade point average.

23.     Tuesday, June 18, 2019, around 1:45P.M. > Devastation! Oh Lord Jesus this cannot be happening to me, Hatfield exclaimed. His music instructor, Dr. Thomas Reed, has just graded his Homework Assignment 2, Exhibit(1), at 40% out of a possible 100%, e.g., giving credit for 4 out of 10. Thus Hatfield received an "F" for the work he was counting on for an "A". Defendant Reed coupled this humiliating "F" grade with the plagiarism allegation.

24.     Tuesday, June 18, 2019, around 2:15P.M. > How is it plagiarism when the assignment clearly was to look-up terms and define them? Dr. Thomas Reed even gave his students the exact pages "8-21" Exhibit(1), wherein to find the information for their HW submissions for, again, Exhibit(1). But, the required information, (to properly answer HW Assignment 2, to wit: *locate definitions for 10 terms and related musical instruments*, wasn't on pages 8-21. In point of fact here, Hatfield had to search through the only study material supplied to him, i.e. (a workbook titled "Music Workbook" by, Dr. Thomas Reed). Hatfield then assigned each definition to its respective question by simply answering same as it was spelled-out in the study material, supplied by Defendant Dr. Thomas Reed, Exhibit(2).

25.     Tuesday, June 18, 2019, around 2:30P.M. > Hatfield needed a 100% grade on HW Assignment 2, to bring his G.P.A. up. Before this plagiarism attack, charge and conviction, Defendant Reed never suggested homework assignments must be answered in essay form. And on its face, the entire premise of HW Assignment 2, Exhibit(1), clearly indicated to

Hatfield, an easy HW assignment to improve his grade in music class. Therefore, Plaintiff delightedly tackled HW Assignment 2, knowing he could easily get a 100% grade. Defendant Reed, in HW Assignment 2, never suggested in any way, shape or form he would consider it either cheating or plagiarism should one define terms and phrases precisely as they appear in his Music Workbook. And no reasonable person could be expected to know the answers to HW Assignment 2, Exhibit(1), without researching same. And upon doing so, wouldn't plagiarism be more well-defined, (if Plaintiff), rather than simply recording definitions as they were found in the assigned Music Workbook, Exhibit(2), he, instead, manipulated the researched text, then, submitted the homework as his own composition?

26.     Tuesday, June 18, 2019 > Defendant Reed's HW Assignment 2, appeared to be an assignment answerable by definitions. And Defendant Reed knew or should have known the precise origin of the material for the answers to HW Assignment 2, Exhibit(1), because he himself furnished the page numbers where those answers could be found, to wit: (pp. 8-21), from the very Music Workbook baring his name, to wit: (by, Dr. Thomas Reed). Hatfield's answers, Exhibit(2), were not found on pages, (pp. 8-21) of Dr. Thomas Reed's Music Workbook but were instead located elsewhere and once discovered, simply recorded and submitted, with neither forethought nor intent at plagiarism. Therefore Reed: 1), ought not have attacked, charged nor convicted Hatfield of plagiarism; 2), bullied Hatfield with humiliating language regarding same, to wit: "...*this is plagiarism; this is unacceptable at any college; you absolutely cannot do this again*; or 3), essentially threatening Hatfield with dismissal from music class and Ashland University, even if Reed, again, wrongfully established Hatfield had plagiarized course work.

27.     Tuesday, June 18, 2019 > Educator and Defendant Dr. Thomas Reed has never offered a college Rule Book nor any other formal directive explaining what is or is not considered acceptable academic behavior and certainly not any agreed-upon definition of what exactly constitutes plagiarism. In point of fact, Plaintiff had to research the term and found "plagiarism" is defined as, "...[t]he misappropriation of the literary work of another in whole or in part and *publishing* it as one's own...." Copyright 1988 by Direct Learning Systems, Inc., 2017 Edition. Disturbed by Defendant Reed's attack, charge and conviction for plagiarism, Plaintiff, erring on the side of caution, adds the afore-mentioned credit. To this end, *publication* is defined as, "...[m]aking a thing *known to the general public*; to *issue to the general public*; to *put into circulation to the general public in whole or in part, the literary work of another and claiming it as one's own*. Here, even "if" Plaintiff had copied word-for-word the answers to Defendant Reed's HW Assignment 2 from the furnished Music Workbook and sequentially submitted same directly back to his instructor, he certainly did not *publish* subject homework assignment *to the general public*. And what is worse, Defendant Reed attacked, charged and convicted Plaintiff for plagiarism with unclean hands. This is true because Defendant <u>did</u> *publish* his Music Workbook *to the general public*; Defendant <u>did</u> *issue* his Music Workbook *to the general public* and Defendant <u>did</u> *put into circulation to the general public* his Music Workbook, to wit: the literary work of many others and claimed it as his own. Thus, Defendant Reed's Music Workbook remains replete from cover to cover with literary work credible to other names.

6

28.     Singularly, Defendant circulated to the general public, total composition ownership of his Music Workbook, boldly claiming as such on its front cover, to wit: by, Dr. Thomas Reed. Save for Defendant Reed's Music Workbook of subject here, Plaintiff never received a single bound copy of any music text book. Plaintiff was issued instead, a stapled pack of 100 sheets or so of printed and Xeroxed 8½" x 11" white bond paper, titled on its front cover page as noted above, to wit: Music Workbook, by Dr. Thomas Reed. And it was from this stack of stapled-printed-study-material, Plaintiff researched but found not a single answer to Defendant Reed's HW Assignment 2, on (pp. 8-21), by Bierman nor within the "separate [phantom] document", Defendant referenced, of which Plaintiff, also, never had.

29.     Tuesday, June 18, 2019 > This day, Plaintiff was overwhelmed and incapable, emotionally, from being able to confidently continue his studies in Defendant Reed's music class or any other course of study. Defendant Reed's false and humiliating accusation of deliberate, calculated cheating, through an unfounded, malicious, public rebuke, representing as it were, Plaintiff consciously set out to deceive Defendant with his answers to HW Assignment 2, rather than the truth of the matter, to wit: Plaintiff simple offered precise definitions, researched from Defendant's, claimed, self-authored Music Workbook.

30.     Tuesday, June 18, 2019 > On this date, Hatfield, a brand new student at Ashland University for 11 days, never was furnished with either an electronic or written notice of prohibited acts nor acceptable standards and behavior, e.g. a Student Rule Book, of which easily could have cautioned him, as a new student at Ashland University, exactly what its educators consider plagiarism. More pointedly here, this former Ashland University student, having also previously attended college, beginning first in 1972 at Huntington, West Virginia's Marshall University, then, on to West Virginia Career College, also in Huntington and attending as well West Virginia University at one of its former extensions in Montgomery, West Virginia through a joint Board of Regents program via Mount Olive Complex -- from which course of study he presently holds 80 credit hours toward his BA degree, (Exhibit 3), never has been accused of plagiarism, let alone attacked for the alleged suspicion of same, then charged and convicted, as here, through Dr. Thomas Reed's deliberate, mean spirited attack but afforded no formal proceeding to present his side of the matter wherein then, the truth could properly be determined, following Plaintiff's opportunity to offer extenuating or explanatory facts.

31.     Tuesday, June 18, 2019, around 3:10P.M. > Noticing Ms. Murphy escorting Ashland University Officials from an area adjacent to the Law Library where Hatfield works as the Librarian, he said hello to her and Ms. Robin Chaney, an Ashland University Official Plaintiff easily recognized. Whereupon Ms. Chaney remarked in words to the effect to Hatfield, "...I told you I'd get you in...." Hatfield smiled and told her in reply, "...Thank you...." As the trio were exiting together, Ms. Murphy was heard saying to Ms. Chaney in words to the effect, "...When I told Mr. Hatfield he was officially enrolled, he cried...."

32.     Tuesday, June 18, 2019 > Waiting for Stevens Correctional Center, (Ashland University Site Director), Ms. Murphy's return from seeing her A.U. quests out, Hatfield described to her how Dr. Thomas Reed's attacked, charged and convicted him of plagiarism. In his distraught state-of-mind, Hatfield explained to Ms. Murphy in words to

the effect, "this hurt me worse than being denied parole...." And explaining further to Ms. Murphy, Hatfield stated he felt left with no alternative but to drop all of his classes and withdraw from any further course of study because of how Defendant Reed had destroyed his academic reputation at Ashland University. In a very gracious manner, Ms. Murphy urged Hatfield not to do so and suggested instead, "...You should send him a message...." But because of his profound feelings of humiliation over Defendant Reed's unjustified condemnations, he felt it impossible to continue his studies at Ashland University. He turned-in his text books and Defendant Reed's Music Workbook; unpinned his Ashland University Student I.D. from his shirt, telling Ms. Murphy, "...I will send him a message...."

33.     **Monday, July 24, 2019 >** Here, begins Plaintiff's earnest effort to state a claim whereupon relief can be had in seeking redress for Defendant Reed's tortuously intentional, defamatory and libelous conduct. And concomitantly with these facts are Defendant Reed's written, publicized, callous and mean spirited attack, charge and conviction of Hatfield for the allegation of plagiarism, without any formal proceeding to properly determine the truth of the matter, destroying as it were, his lifelong dream to complete his BA degree, here, by way the TABLET, through A.U.'s Correctional Education Program in partnership with WV Division of Corrections at Stevens Correctional Center.

34.     **Monday, July 24, 2019 >** This is true, because, attacking, charging and convicting Hatfield for wrongful conduct, here, plagiarism, (which could constitute just cause for a student's removal from Ashland University), without any formal proceeding to properly determine the truth of the matter, is an act of libel. And in a trial in this case, injury to Plaintiff's previously ethical academic reputation, well established to be "in good standing" beginning since 1972 and continuing until Dr. Thomas Reed's June 18, 2019 intentional libelous and unlawful conduct, could be determined, from which Hatfield should recover.

## VII. EXHAUSTION OF LEGAL REMEDIES

35.     Plaintiff Hatfield has no plain, adequate nor complete remedy at law to redress the wrongs effected on him by Defendant Reed other than this civil action as described herein.

36.     Defendant Reed's action is an end-run-around Plaintiff's Constitutional right to due process. Hatfield therefore welcomes this Honorable Court directing the parties to jointly enter into an appropriate forum wherein Defendant's violation of Plaintiff's civil rights could properly be resolved at the lowest possible administrative level, where Plaintiff may have an reasonable opportunity to dispute Defendant Reed's unsubstantiated claims. Defendant Reed attacked, charged and convicted Hatfield without first establishing any formal proceedings for recourse. Therefore, part and parcel of Plaintiff Hatfield's Civil Action Complaint necessarily includes Defendant Reed's refusal to afford him any formal proceeding to properly adjudicate his impulsive and unsubstantiated claim here, of plagiarism.

37.     While Plaintiff clearly attempts to put-forth here a civil action and not a criminal matter, he respectfully references for emphasis, to wit: only prosecutors are permitted to charge a suspect on probable cause alone; but even then, the accused is afforded a

preliminary hearing to determine the validity of the accusations alleged. Here, the effect of Reed's finding of "deliberate plagiarism" against Plaintiff resulted only with an imposition of defamation and shame from Defendant's attack, charge and conviction, with no due process afforded. This charge against Plaintiff Hatfield for plagiarism, i.e. copying words disseminated to him by Defendant Reed in the form of a Workbook, (claimed to be the work-product entirely of his own making), HW Assignment 2: "...Answer the following [10] questions based on the reading from pp. 8-21, by Bierman (see the separate document)...," raises all kinds of thorny questions. First, Plaintiff was not furnished with any "separate document" and has no idea about what Defendant Reed's directive, (is), in this regard? Secondly, Defendant Reed accused Plaintiff, to wit: "...*this is plagiarism; this is unacceptable at any college; you absolutely cannot do this again*, [etcetera's]...." Third, Defendant Reed essentially threatened Plaintiff with administrative dismissal from his music class and Ashland University, (if), Defendant Reed, upon his own volition as here, again, determined Plaintiff copied another's composition and claimed it as is own. Fourth, adding insult to injury, Defendant also sanctioned Plaintiff with a 40% grade out of a 100% possible score. So, if Plaintiff's homework was in fact plagiarized, why didn't Defendant Reed either award 0% with his libelous accusations published and distributed in a public forum or 100% for clearly answering correctly, all questions contained in HW Assignment 2, Exhibit(1)? Shouldn't the true author, from whom Plaintiff supposedly copied from, (supposedly Reed), be able to correctly answers all 10 questions posed by Reed himself -- assuming the source of the work complained of is Reed's, since his name is on the front cover of the "Music Workbook" wherefrom Plaintiff sought, discovered and recited it back to Reed in the text of his submission to HW Assignment 2?  Said another way, but for all of Plaintiff's answers coming directly from Defendant Reed's own hand -- or at the very least, his "Music Workbook", of which Defendant Reed claims to be of his own hand -- shouldn't Plaintiff, then, receive zero credit, if: "...*this is plagiarism; this is unacceptable at any college; you absolutely cannot do this again*, [etcetera's]...," is in-fact accurate; or, 100% credit if Plaintiff, (in point of fact), copied it as Reed charges?

38.     Either Plaintiff plagiarized or he did not. Reed can't have his cake and eat it to. One can't be a little bit pregnant. In his attack, charge and conviction of Plaintiff for "plagiarism", Defendant Reed did not say in words to the effect, "...*Mr. Hatfield, "some" of your submitted work, for Homework Assignment 2, raises the question of whether the composition is entirely yours alone. Therefore, I am disallowing "some" credit to certain answers and asking you to revisit them more closely in essay form, seeking of course, answers more closely to your own words....*" Oh no! Defendant Reed did not place those remarks in the Journal Entry, Comment section of an Ashland University TABLET.

## VIII. LEGAL CLAIMS

39.     Plaintiff Hatfield re-alleges and incorporates by reference paragraphs 1-38 above.

40.     Elements necessary to constitute cause of action in this case with Plaintiff's first pleading:

Plaintiff respectfully asserts every living person is within the law of defamation and here, during the time when Plaintiff was enrolled and actively participating in the scope of continuing his educational pursuits toward completing the required number of credit hours at Ashland University to obtain a BA Degree, Defendant Reed, both defamed and shamed Plaintiff in written and publicized text in Ashland University's TABLET "Comment" section.

41.    Facts showing elements of cause of action upon legal grounds which Plaintiff bases his case:

On June 18, 2019, following the reading of Defendant Dr. Thomas Reed's denunciating defamation and shaming of Plaintiff, (for so-called plagiarism), Hatfield notified Stevens Correctional Center employee, Ms. Elisabeth C. Murphy, whom works as well for Ashland University of Ashland, Ohio as its Site Director, of his decision to drop all Ashland University classes, because, as Plaintiff explained to Ms. Murphy, he was suffering great emotional pain over Defendant's written and published attack, charge and conviction, for plagiarism, written in the Journal Entry, Comment section of Ashland University's TABLET. Defendant Reed had damaged his good academic reputation; and with false claims, violated his constitutional rights; and, he was suffering great loss from the knowing: without being able to continue at Ashland University, Plaintiff's life-long dream of completing his BA Degree is over after being irreparably defamed and shamed by Reed.

42.    Legal effect Plaintiff seeks to establish from the ultimate alleged facts:

While Defendant Reed's written and publicized words, "...*this is plagiarism; this is unacceptable at any college; you absolutely cannot do this again*, [etcetera's]...," might not impute a punishable crime, they nonetheless contain the sort of imputation which Plaintiff relies on to establish a cause of action in this case. And adding insult to injury, Defendant Reed essentially was, as well, threatening Plaintiff with dismissal from his music class and Ashland University if Defendant, (upon his own volition and without affording any due process), determined Plaintiff ever, again, plagiarized course work. Defendant's words, Plaintiff also contends, were calculated as well to vilify, bringing Plaintiff, as it were, into hatred, contempt and ridicule. Yet even if ridicule alone is employed here, shouldn't the tendency to widen Plaintiff's claim of libelous defamation, rather than limit the scope of libel, be the test here, given Defendant Reed's written and published statements about Plaintiff could be proved false at a trial in this case but certainly tends to injure Plaintiff's reputation and otherwise expose him to mistrust among Ashland University educators; shame among his classmates, whom are as well his peers at Stevens Correctional Center; and, contempt among his Division of Correction supervisors whom manage his daily activities as Law Librarian at Stevens Correctional Center where now, his credibility suffers?

43.    Defendant Reed attacked, charged and convicted Plaintiff Hatfield for plagiarism regarding his submitted work for Homework Assignment 2 and published these defaming remarks to a third party without any measure of due care -- with what a reasonably prudent and honest person should have done. And these omissions by Defendant Reed clearly define negligence, to wit: "...the omission to do something a reasonable person, guided upon considerations ordinarily regulating the conduct of human affairs...." Here, Defendant owed Plaintiff a duty of due care. But Defendant violated this duty and Plaintiff

suffered harm. And as such then, this Honorable Court is therefore respectfully requested to, at the very least, recognize a *conclusive presumption of negligence* in Defendant's actions.

## IX. PRAYER FOR RELIEF

44.     In accordance with the Uniform Declaratory Judgments Act, 28 USC §§ 2201, 2202 -- for the determination of the controversy in question -- Plaintiff seeks this Honorable Court's *Judgment* in conclusively *Declaring* the acts and omissions of Defendant Thomas Reed in attacking, charging and convicting Plaintiff of the serious condemnation for plagiarism is libelous and Reed concluded same without due process, further violating Plaintiff's rights under U.S. Federal Statutes and the Constitution of the United States.

45.     Plaintiff further seeks of this Honorable Court, Declaratory Judgment in finding: 1), Ashland University and more specifically its educators, here Defendant Dr. Thomas Reed, never furnish students with an Academic Rule Book nor any other formal directive explaining what is or is not considered acceptable academic behavior and certainly must furnish its students with an agreed-upon definition of what exactly constitutes plagiarism, to wit: "...[t]he appropriation of the literary work of another in whole or in part and *publishing* it as one's own...;" explaining, *publication* is defined as, "...[m]aking a thing *known to the general public*; to *issue to the general public*; and, to *put into circulation to the general public in whole or in part, the literary work of another and claiming it as one's own*." 2), Ashland University and more specifically its educators, here Defendant Dr. Thomas Reed, must afford students an opportunity to constitutionally challenge alleged or otherwise unsubstantiated accusations, declarations, allegations or contentions of any academic wrongdoing. 3), Ashland University and more specifically its educators, here Defendant Dr. Thomas Reed, should, with particularized specificity, state in homework assignments and examinations what will and will not be acceptable responses, e.g.: "Responses in the form of simple definitions without assigning credit will be acceptable"; or, "Responses in the form of simple definitions without assigning credit are not acceptable and must be in essay form, seeking of course, answers more closely to your own words." 4), Ashland University and more specifically its educators, here Defendant Reed, should not publish unsubstantiated accusations, declaration, allegations or contentions of alleged academic wrongdoing by students in a Journal Entry, Comment section on A.U. TABLETS.

46.     In a further effort toward evenhandedness, Plaintiff also seeks, *Injunction Relief* in the direction of: 1), being granted a re-enrollment opportunity for the Fall Semester of 2019 at Ashland University for 6 credit hrs., with a continued 6 hr. registration privilege per semester, choosing for himself, classes from a course curriculum list supplied to him through direct mail by an Ashland University Student Advisor, with his registration and course-load financed through the Federal Student Aid Pell Grant Program, (Exhibit 4) and granted, thereafter, re-enrollment privileges until he either finishes the necessary hours required for his BA Degree or his Pell Grant allowance expires and then, offered an opportunity to continue his studies at his own expense; 2), directing Dr. Thomas Reed and other similarly situated educators of Ashland University to immediately begin furnishing all students, (bound or free), with an Ashland University Student Rule Book, electronic or

written, noticing all students of what is and is not considered acceptable academic behavior, inclusive of what Ashland University educators consider plagiarism. 3), instructing Defendant Reed: Plaintiff's rights guaranteed under U.S. Federal Statutes and the provisions of the Constitution of the United States of America, require an opportunity to challenge suspected, assumed or otherwise unsubstantiated accusations, declarations or contentions regarding academic allegations of wrongdoing; 4), instructing Defendant Dr. Thomas Reed, Plaintiff is deserving of an official administrative act of contrition, to wit: an expression of regret, published in the form of a personal letter on A.U. letterhead stating:

====================================================================

# MEMORANDUM

TO:      **Stephen W. Hatfield**
         **D.O.C. No. 3436031**
         **795 Virginia Avenue**
         **Welch, WV 24801**

FROM:  **Dr. Thomas Reed**
         **401 College Avenue**
         **Ashland University 44805**

DATE: _____

      Re: Letter of Apology

Dear Mr. Hatfield:

      On or about June 18, 2019, I mistakably concluded you had plagiarized a submitted homework assignment. And in a further lapse of prudent judgment, I issued to you, through the Journal Entry, Comment section of Ashland University's TABLET, a very harshly written reprimand before affording you a formal opportunity to be heard and offer extenuating facts in relation to my allegations of wrongdoing but I ought not have do so.

      Therefore, please accept this brief but well intentioned apology, together with a personal and welcoming invitation for you to re-enroll at Ashland University.

                                    Sincerely,


                                    Dr. Thomas Reed

CC: Ms. Elisabeth Murphy, A.U. Site Director for Stevens Correctional Center
====================================================================

44.     Defendant Reed should be instructed to reimburse Plaintiff $490 for filing fees.

45.     Unless this Court Grants Declaratory and Injunctive Relief, Hatfield will continue to suffer the devastating effects of Defendant Reed's denial of his constitutional rights.

46.     Plaintiff further seeks any other relief this Honorable Court considers just and fair.

## X. TRIAL BY JURY REQUESTED

47.     Plaintiff seeks a trial by jury in this case to prove his rights have been violated and he has suffered great loss and severe damage to his name as a result of Defendant Dr. Thomas Reed's unconstitutional actions. And unless jurors, after hearing evidence in this case from both parties and thereafter properly pass judgment in this matter, similarly situated students may never be afforded an opportunity to constitutionally challenge impulsive and otherwise unsubstantiated claims of wrongdoing. Without affording students an opportunity to be heard, Ashland University's, Dr. Thomas Reed and other similarly situated educators will continue having free supremacy to do very bad acts against very vulnerable students whom will have to endure seeking instruction under despotic provisos.

Date: July 17, 2019

Respectfully submitted,

Signature: _____

Stephen Westley Hatfield, Plaintiff, Pro Se

## V E R I F I C A T I O N

I, Stephen Westley Hatfield, Plaintiff, have read the foregoing Civil Action Complaint filed in the United States District Court for the Southern District of West Virginia at Bluefield, against Defendant Dr. Thomas Reed, in his individual and official capacity, whose employment location at the time of this filing was Ashland University, 401 College Avenue Ashland, Ohio 44805 and hereby verify all relevant matters thereto otherwise alleged therein are true except as to matters alleged on information and as to those matters, I believe them to also be true and correct to the best of my knowledge and belief.

Signature: _____

Stephen W. Hatfield

STATE OF WEST VIRGINIA
County of McDowell, To Wit:

Taken, subscribed and sworn to before me this  17  day of  July , 2019 .

AFFIX SEAL

Official Seal
Notary Public, State of West Virginia
Edith R. Howell
Stevens Correctional Center
795 Virginia Avenue
Welch WV 24801
My Commission Expires Nov. 13, 2023

_Edith Howell_
Notary Public

My Commission Expires on ____11-13-2023____.

13

# IN THE UNITED STATES DISTRICT COURT
### FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD

Stephen Westley Hatfield,
                     **Plaintiff,**


*Vs.*                                              **Civil Action No._____**


Dr. Thomas Reed,
                     **Defendant.**


_____
## CERTIFICATE OF SERVICE


   I, Stephen Westley Hatfield, Plaintiff in the foregoing Civil Action Complaint, filed in the United States District Court for the Southern District of West Virginia, do hereby certify a true and exact copy of said Complaint with forms, to wit: (Summons and Acknowledgment of Receipt of Summons and Complaint), have been duly mailed to the Honorable Clerk of the U.S. District Court at 601 Federal Street, Bluefield, WV 24701, for delivery through the United States Postal Service or by an authorized individual of the Sheriff's Office to:


               Dr. Thomas Reed, Defendant
               401 College Avenue
               Ashland, Ohio 44805

Date: July 17, 2019

                         Respectfully submitted,

               Signature: _____
                         Stephen Westley Hatfield, Plaintiff, Pro Se.
                         795 Virginia Avenue
                         D.O.C. No. 3436031
                         Stevens Correctional Center
                         Welch, West Virginia 24801